# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR N. AGUIRRE, | 1:08-cv-00950 OWW DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KATHY MENDOZA-POWERS, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation ("CDCR") serving a sentence of 27 years to life following his 1981 conviction in the Tulare County Superior Court for one count of first degree murder with an enhancement for use of a firearm. (Exhibit A, Abstract of Judgment, attached to Petition.)

In the instant petition Petitioner does not challenge the validity of his conviction, rather, he challenges the Board of Parole Hearing's ("BPH") August 15, 2006, decision finding him unsuitable for parole.

In March 2007, Petitioner filed a state petition for writ of habeas corpus in the Tulare County Superior Court alleging that there was no reasonable evidence supporting the denial of parole, no connection between the factors cited to deny parole and public safety, his due process

rights were violated because parole was denial based on unchanging factors of the crime and prior criminal record, and parole was an expectation from the plea agreement. (Exhibit 1.)

On March 20, 2007, the Superior Court denied Petitioner's petition finding "there was more than enough evidence to justify the denial of [his] parole." (Exhibit G, to Petition.)

In April 2007, Petitioner filed the same petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District. The petition was summarily denied on May 11, 2007. (Exhibit H, to Petition.)

In June 2007, Petitioner filed a petition for review in the California Supreme Court, which was summarily denied on December 12, 2007. (Exhibit I, to Petition.)

Petitioner filed the instant federal petition for writ of habeas corpus on July 7, 2008. Respondent filed an answer to the petition on October 7, 2008, and Petitioner filed a traverse on November 3, 2008. (Court Docs. 10, 12.)

STATEMENT OF FACTS[1]

> Background facts summarizing the probation report is compiled from various police reports and statements that around 11:00 p.m. on December 30, 1979, 19-year-old Abunbio Uriarte met with [Petitioner] and his 14-year-old brother Anthony in a market in Visalia. The victim, 19-year-old Dominic Zappia, drove up alone in a 1966 blue Chevrolet. The Aquirre brothers walked up to the victim's car and started a conversation. The conversation turned to the wheels on Zappia's car. [Petitioner] told Zappia they wanted to ride in his vehicle. Apparently, Zappia consented. [Petitioner] sat in the front seat on the passenger side where he argued with the driver. He drove into the countryside, around Visalia and parked the vehicle on the dirt road next to a dry irrigation ditch. [Petitioner] got out of the car with the victim following. An altercation began between [Petitioner] and the victim. [Petitioner] began to beat the victim. Anthony and Abunbio got out of the vehicle and joined in the altercation. All three began to hit and kick Zappia. By this time, the parties were in the irrigation ditch. The three assailants left the victim and walked up the ditch bank. Anthony and Abunbio got into the automobile while [Petitioner] remained on the ditch bank. [Petitioner] fired four shots at the victim. [Petitioner] then went back into the ditch and fired a shot into Zappia's head, killing him instantly. [Petitioner] returned to the vehicle, got in and stated, "Hey man, let's split. I just shot that dude in the head." They drove away, returning to the Aquirre residence. The assailants determined they could not remove the wheels from the vehicle so they decided to burn the vehicle. Abunbio drove the car into the countryside, [and] the car was burned. The body of the victim was found in the dry irrigation ditch. Numerous fired and unfired .25 caliber shell casings were found by the dirt roadside and on the lip of the ditch. One fired casing was found in the ditch.

---

[1] This information is taken verbatim from the BPH's transcript which quoted the opinion of the California Court of Appeal, Fifth Appellate District. (Petition, Exhibit A, at 7-9, 39-41.)

2

Also, shoes and tire tracks were found at that location. The burned up 1966 Chevrolet was also found. Prints were taken off the tires.

## DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

3

1  As a threshold matter, this Court must "first decide what constitutes 'clearly established
2  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
3  *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
4  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
5  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
6  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
7  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

8  Finally, this Court must consider whether the state court's decision was "contrary to, or
9  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
10 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
11 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
12 Court on a question of law or if the state court decides a case differently than [the] Court has on a
13 set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.
14 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
15 state court identifies the correct governing legal principle from [the] Court's decisions but
16 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
17 413.

18 "[A] federal court may not issue the writ simply because the court concludes in its
19 independent judgment that the relevant state court decision applied clearly established federal
20 law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.
21 A federal habeas court making the "unreasonable application" inquiry should ask whether the
22 state court's application of clearly established federal law was "objectively unreasonable." Id. at
23 409.

24  Petitioner has the burden of establishing that the decision of the state court is contrary to
25 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
26 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
27 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
28 state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

4

1  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

2  AEDPA requires that we give considerable deference to state court decisions. The state
3  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
4  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,
5  537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

6  II.  Review of Petition

7  A parole release determination is not subject to all the due process protections of an
8  adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
9  also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural
10 protections that particular situations demand). "[S]ince the setting of a minimum term is not part
11 of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not
12 constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at
13 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole
14 board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive
15 advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an
16 "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the
17 inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the
18 Board must be supported by "some evidence" having an indicia of reliability. Superintendent,
19 Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th
20 Cir.1987).

21 "In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not
22 comport with 'the minimum requirements of procedural due process,' unless the findings of the
23 prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454
24 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128.  In
25 determining whether the "some evidence" standard is met, the Court need not examine the entire
26 record, independently assess the credibility of witnesses, or re-weigh the evidence. Id.  Rather,
27 the Court must determine whether there is any evidence in the record that could support the
28 conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56.  Although Hill

involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the BPH is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Petition, Exhibit A.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (Aug. 21, 2008). The applicable standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[2]

At the 2006 parole hearing, the BPH relied primarily on the circumstances of Petitioner's commitment offense finding it was carried out in a dispassionate and calculated manner such as an execution-style murder. The motive for the offense was inexplicable and very trivial in relation to the offense. (Exhibit A, at 39.) In addition, Petitioner had an escalating pattern of criminal conduct and/or violence. (Id. at 42.)

With regard to the circumstances of the commitment offense, the BPH found that it was carried out in a dispassionate and calculated manner such as an execution-style manner. This finding is supported by "some evidence" demonstrating that Petitioner continues to remain a threat to public safety. Petitioner began to beat the victim and the two passengers joined the altercation, with all three of them hitting and kicking the victim. The two other passengers went back to the vehicle, and Petitioner remained in the ditch bank and shot at the victim four victims. He then went into the ditch and shot the fatal blow straight into the victim's head. Petitioner did know the victim, had no prior history with him, and was not even aware that the victim was mentally challenged. Petitioner was 16 years old at the time of the offense (42 years at time of 2006 hearing) and had been previously charged with two other separate and independent murders. (Exhibit A, at 32-33.) Although neither of the prior murder charges went to trial because the first was dismissed on Double Jeopardy grounds and the second was dismissed upon pronouncement of judgment and murder of the victim in this case, his involvement was

---

[2] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

1  nonetheless documented and was cause for concern. (Id. at 32-33, 42.)

2  In Lawrence, the Court concluded that the sole reliance on the circumstances of the commitment offense to deny parole was not supported by "some evidence" in the record because the offense took place 36 years prior and "all the information in [the] postconviction record supports the determination that the inmate is rehabilitated and no longer poses a danger to public safety." Id. at 1226-1227. Although the BPH relied solely on the circumstances of Petitioner's commitment offense and prior criminal history in denying parole, the Court finds that in this case, some evidence supports the BPH's finding that he continues to be remain a danger to public safety based on such circumstances. At the time of the 2006 hearing, Petitioner had been incarcerated for just over 25 years, on a 27 years to life sentence, and this was his third parole hearing.[3] Based upon this record, the BPH's reliance on the aggravated and horrific nature of the commitment offense, trivial motive, and escalating criminal conduct and/or violence, provide some evidence that he remains dangerous and is not yet suitable for parole.[4] In re Lawrence, 44 Cal.4th at 1228 (noting that the determination as to petitioner's conviction offense in that case "does not alter our affirmation that certain conviction offenses may be so 'heinous, atrocious or cruel' that an inmate's due process rights would not be violated if he or she were to be denied parole on the basis that the gravity of the conviction offense establishes current dangerousness.").

Pursuant to section 2402(d), the BPH also considered the positive factors and commenced Petitioner for receiving extensive certificates in welding, painting and decorating, self-help with AA, and being discipline-free for years. However, on balance the positive aspects did not

---

[3] In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853 (9th Cir. 2007), citing Biggs, 334 F.3d at 916. Nevertheless, as in this case, in both Irons and Biggs, the Ninth Circuit upheld the denials of parole based solely on the commitment offense. This was because in each of these cases the prisoner had not yet served the minimum term of his sentence. Therefore, the due process concerns noted in Biggs are not at issue in this case.

[4] The BPH noted that the District Attorney opposed Petitioner's release. Although the District Attorney's opposition is not, by itself, sufficient to support a finding that an inmate is unsuitable, it can and was in this instance considered as part of the overall finding. Cal. Pen. Code § 3042(a) and (f)(3), and Cal. Code Reg. tit. 15, § 2402(b).

8

outweigh the factors of unsuitability.

The Court acknowledges that Petitioner's exemplary prison record and evidence of rehabilitation will undoubtedly, at some point, diminish the circumstances of the commitment offense to the point of very minimal or no value in assessing his level of danger if released; however, based on this record, the Court cannot say that at the time of the 2006 hearing Petitioner had reached such point.

Petitioner further contends that the BPH's 2006 decision violated his plea agreement because it was his "understanding" that by entering a plea of guilty, he would be released on parole after his minimum eligible parole date, earned good time, and served sufficient time. (Petition, at 18-19.)

The abstract of judgment and sentencing transcript indicate that Petitioner was sentenced to a term of twenty-seven years to life with the possibility of parole. (See Exhibits C & D, to Petition.) In addition, neither the abstract of judgment or sentencing transcript indicate that the plea agreement included a provision that Petitioner would be released on parole immediately after serving his minimum eligible parole date, earned good time credits, or served sufficient time. (Id.)

Petitioner has presented nothing to show he was promised he would be released after a certain amount of time. Indeed, his sentence was for life *with* the *possibility* of parole. See Exhibit A. Moreover, Petitioner has not been denied parole forever, rather the BPH set another hearing one year out and encouraged Petitioner to continue making positive progress so that he may one day be eligible for parole.

The BPH's findings are supported by "some evidence" and it cannot be said that the state court's resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

9

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 20, 2009**            /s/ **Dennis L. Beck**
                                  UNITED STATES MAGISTRATE JUDGE